COMMONWEALTH v. WATSON & THOMPSON.

**Permitting Gaming in Tavern.**
> Where the landlord has no knowledge that gaming is going on in his tavern he is not criminally responsible.

APPEAL FROM MASON CIRCUIT COURT.

June 11, 1866.

OPINION OF THE COURT BY JUDGE WILLIAMS:

The appellees were indicted as tavern-keepers for permitting gaming in their house.

They had leased the privileges of the bar to another for a year; some time after this leasing and before the year expired the fair at Maysville came on, the house was much crowded with guests, and the landlord very busy entertaining them.

The lease included the barroom and sleeping-room immediately above it; this upper room had been formerly used as a barber shop, and the only door communicating with the other rooms of the house had been nailed up by the lessee of the bar, so that the only approach to this room was from the street through the barroom; he had his bed made up and the room adjusted by his own servant, so that the servants of the landlord had no business in this room, and rarely if ever went there. The barkeeper leased this room to Lytle during the fair, and he set up a faro bank in it, at which money was lost and won. The defendants prove by several witnesses that they were busy, did not go about the room, that their servants did not, and that they in fact knew nothing of this gaming.

The statute declares that gaming in a tavern shall be presumed to be with the permission and knowledge of the landlord, "*unless the contrary be clearly proved.*" 1 Stant. Rev. Stat. 564, 565.

Now, where, as in this case, the landlord *bona fidely* leases the privilege of his bar with the room in which to conduct it and a bedroom for the barkeeper, and really has no control over the same by the terms of the leasing, and when the evidence does not tend to prove that this was done for any illegal purpose, or with a view that either of the rooms are to be used for any such illegal purpose, and when it has only been permitted once, and then on an occasion of this kind, although so used for several days, yet, as it was secretly and silently conducted, it seems to us that the landlords have made it clearly appear that they did not know it, and that as they acted *bona fidely* in such leasing there is no just ground to infer they intend by any artifice or *management* to avoid responsibility, whilst they expected such illegal use of the rooms; had this indictment been against the barkeeper under this evidence a very different inference might perhaps be drawn from his conduct.

Lytle, the keeper of the faro bank, did not even board at this hotel, and no evidence raises any fair presumption that the landlord knew he was in any manner occupying said room, whilst the barkeeper did know it, and it being immediately over his bar and

the ingress and egress to and from it being through his barroom and, doubtless, he deriving profits from those visiting, a reasonable inference might perhaps be indulged that he knew all the time of the illegal use which was being made of it, and his ignorance of this was more feigned than real. Where, as in this case, the landlord did not in fact know of the gaming, and no inference can properly be indulged that such ignorance was by contrivance for the purpose of evading responsibility, and no negligent supervision and control of their house and rooms are made to appear it seems to us the statute does not warrant its penalty, though gaming, in fact, is done in their rooms. We have no doubt that the landlords were still responsible for the illegal use of these rooms notwithstanding the lease, had they not clearly shown their ignorance of the gaming, and had not the circumstances negatived any idea of negligence or conduct and evasive purpose upon their part.

The circuit judge, to whom the case was submitted without the intervention of a jury, properly dismissed the indictment and the judgment is affirmed.

